**No. 22-60566**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

GABRIEL OLIVIER,

     Plaintiff - Appellant,

 v.

CITY OF BRANDON, MISSISSIPPI; WILLIAM A. THOMPSON,
individually and in his official capacity as Chief of Police for
Brandon Police Department,

     Defendants - Appellees.

_____

Appeal from the United States District Court
Southern District of Mississippi

_____

**APPELLANT'S BRIEF**

_____

NATHAN W. KELLUM
Center for Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117
(901) 684-5485

**Attorney for Appellant**

## <u>RULE 28.2.1 CERTIFICATE OF INTERESTED PERSONS</u>

(1) No. 22-60566, *Gabriel Olivier v. City of Brandon, Mississippi*

(2) The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of the case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

    a. Plaintiff-Appellant Gabriel Olivier states that he is not a subsidiary or an affiliate of a publicly owned corporation.

    b. On behalf of Plaintiff-Appellant, the following attorney associated with the law firm Center for Religious Expression has appeared: Nathan W. Kellum.

    c. Defendant-Appellee City of Brandon, Mississippi is not a subsidiary or an affiliate of a publicly owned corporation.

    d. Defendant William A. Thompson, Jr. is not a subsidiary or an affiliate of a publicly owned corporation.

    e. On behalf of Defendant-Appellee, the following attorneys have appeared: G. Todd Butler, Mallory K. Brand.

/s/ Nathan W. Kellum                                       January 4, 2023
Nathan W. Kellum, on behalf of                     Date
Plaintiff-Appellant

ii

## STATEMENT REQUESTING ORAL ARGUMENT

Pursuant to 5th Cir. R. 28.2.3, Plaintiff-Appellant Gabriel Olivier requests oral argument for this appeal regarding his right to seek and obtain prospective relief from an ordinance that persists in unconstitutionally banning his protected religious speech in traditional public fora. The district court denied him this opportunity through invocation of the *Heck v. Humphrey* doctrine, barring him from pursuing his claim for future relief because he was charged for violating the ordinance and paid a fine.

Oral dialogue with counsel should prove helpful to the Court in assessing this important and nuanced question of whether *Heck* can properly preclude a constitutional claim seeking prospective relief that does not affect the underlying conviction or sentence.

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ........................................................ ii

STATEMENT REQUESTING ORAL ARGUMENT ........................................... iii

STATEMENT OF JURISDICTION ...................................................................... 1

STATEMENT OF ISSUE ...................................................................................... 1

STATEMENT OF CASE ....................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................ 14

STANDARD OF REVIEW ................................................................................. 15

ARGUMENT ...................................................................................................... 17

     I.     OLIVIER'S PROSPECTIVE RELIEF DOES NOT NECESSARILY
           IMPLY INVALIDITY OF HIS CONVICTION ............................... 20

     II.    ALLOWING *HECK* TO BAR PROSECTIVE RELIEF
           UNCONNECTED TO OLIVIER'S CONVICTION DEPARTS
           FROM SUPREME COURT JURISPRUDENCE ON THE
           INTERPLAY BETWEEN FEDERAL AND STATE COURTS ....... 24

CONCLUSION ................................................................................................... 28

CERTIFICATE OF SERVICE ........................................................................... 28

CERTIFICATE OF COMPLIANCE WITH RULE 32(A) .................................... 29

# TABLE OF AUTHORITIES

**Cases:**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................16

*Association of Am. Railroads v. Beshear*, No. 3:18-cv-00028-GFVT,
2019 WL 1371839 (E. D. Ky. Mar. 26, 2019) ....................................................27

*Aucoin v. Cupil*, 958 F.3d 379 (5th Cir. 2020) ...................................... 18, 20, 21, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................16

*Black v. Hathaway*, 616 F. App'x 650 (5th Cir. 2015) ........................................18

*Brackeen v. Haaland*, 994 F.3d 249 (5th Cir. 2021) ...........................................16

*BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950 (5th Cir. 1977) ...........................26

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) .....................................................24

*Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008) .....................................................18

*Clarke v. Stadler*, 154 F.3d 186 (5th Cir. 1998) ................................................21

*Colorado River Water Conservation District v. United States*,
424 U.S. 800 (1976) ..........................................................................................24

*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) .............24

*Edionwe v. Bailey*, 860 F.3d 287 (5th Cir. 2017) ...............................................16

*Edwards v. Balisok*, 520 U.S. 641 (1997) ...................................................... 19, 21

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ..................25

*Gbalazeh v. City of Dallas, Texas*, 394 F.Supp.3d 666 (N.D. Tex. 2019) ....... 23, 24

*GWTP Invs., L.P. v. SES Americom, Inc.*, 497 F.3d 478 (5th Cir. 2007) ...............15

*Heck v. Humphrey*, 512 U.S. 477 (1994)........................................................ *passim*

*In re Louisiana Crawfish Producers*, 852 F.3d 456 (5th Cir. 2017) .......................16

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004)................................................16

*Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019).........................................22

*Morin v. Caire*, 77 F.3d 116 (5th Cir. 1996) .....................................................16

*Muhammad v. Close*, 540 U.S. 749 (2004)..........................................................18

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989)..................................................................................... 25, 27

*O'Shea v. Littleton*, 414 U.S. 488 (1974)....................................................... 26, 27

*Patsy v. Board of Regents*, 457 U.S. 496 (1982) ...................................................17

*Preiser v. Rodriguez*, 411 U.S. 475 (1973)..........................................................17

*R.R. Commission v. Pullman Co.*, 312 U.S. 496 (1941).........................................24

*Skinner v. Switzer*, 562 U.S. 521 (2011)................................................ 19, 20, 25, 27

*Spielman Motor Co. v. Dodge*, 295 U.S. 89 (1935)...............................................25

*Wilkinson v. Dotson*, 544 U.S. 74 (2005) ....................................................... 21, 25

*Wisconsin v. Constantineau*, 400 U.S. 433 (1971) ................................................26

*Wolff v. McDonell*, 418 U.S. 539 (1974) .............................................................17

*Wooley v. Maynard*, 430 U.S. 705 (1977) ........................................... 20, 25, 26, 27

*Younger v. Harris*, 401 U.S. 37 (1971)...............................................................24

**Statutes and Rules:**

28 U.S.C. §§ 1291.......................................................................................1

28 U.S.C. §§ 1292 ................................................................................1

28 U.S.C. §§ 1331 ................................................................................1

28 U.S.C. §§ 1343 ................................................................................1

28 U.S.C. §§ 2201 ................................................................................1

28 U.S.C. §§ 2202 ................................................................................1

42 U.S.C §§ 1983 ........................................................................... *passim*

42 U.S.C. §§ 1988 ................................................................................1

Fed. R. Civ. P. 56(a) ...........................................................................16

## STATEMENT OF JURISDICTION

Plaintiff-Appellant Gabriel Olivier (Olivier) brings claims against Defendant-Appellee City of Brandon, Mississippi (Brandon), claiming violations of free speech and due process set out in First and Fourteenth Amendments to the United States Constitution.  Olivier pursues prospective relief under 28 U.S.C. §§ 2201 and 2202, 42 U.S.C. §§ 1983 and 1988.  Federal jurisdiction is premised on 28 U.S.C. §§ 1331 and 1343.   This Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 1292. The district court entered an Order on September 23, 2022, granting Brandon's motion for judgment on the pleadings, or alternatively, for summary judgment, and in the same Order, denied Olivier's motion for preliminary injunction.  From this Order, Olivier filed a timely notice of appeal on October 19, 2022.

## STATEMENT OF ISSUE

Can the *Heck v. Humphrey* doctrine be used to bar a litigant's claim for prospective relief that has no direct impact on the underlying conviction or sentence?

## STATEMENT OF CASE

### *Olivier's Desire to Share His Religious Beliefs*

Olivier is an evangelical Christian who seeks out opportunities to share the gospel (good news) of Jesus Christ and other aspects of his religious faith, like his

1

views on abortion, with others in public. (ROA. 9, 33).[1]  In the company of family and friends, Olivier wishes to go to public spots outside of well-attended events and share his evangelistic message through signs, literature, expressive clothing, conversation, and preaching.  (ROA. 9-10, 33-34).  He uses a hand-held amplifier so he can speak in a conversational tone and be heard.  (ROA. 10, 34).

Of particular interest, Olivier wants to impart his beliefs on the edge of public sidewalks bordering Boyce Thompson Drive where that portion of the street runs through Quarry Park near the intersection with Rock Way, the main entryway to the Brandon Amphitheater.  (ROA. 10, 35).  Olivier can find a meaningful number of pedestrians with whom to share his message in these public areas on days when events are occurring at the amphitheater.  (ROA. 10, 35).

### Olivier's Speech on Public Ways in Quarry Park
### Outside Brandon Amphitheater Before the Passage of § 50-45

Brandon owns and maintains Boyce Thompson Drive, along with Quarry Park, a 250-acre public park containing baseball facilities, a dog park, running/biking/nature trails, multiple large green spaces, and several parking lots, along with the Brandon Amphitheater.  (ROA. 10).  The Brandon Amphitheater is an entertainment venue that opened in the spring of 2018 and regularly hosts music concerts, comedy acts, and other ticketed events.  (ROA. 10).

---

[1] Citations to record are designated as "ROA." and to record excerpts as "RE."

In 2018 and 2019, Olivier visited the public ways bounding Boyce Thompson Drive near the intersection with Rock Way to share his religious message around five or six times on days when events were scheduled at the amphitheater. (ROA. 11, 35-36). On several of these occasions, Brandon police officers working the events approached Olivier about his expressive activities, depicted his religious speech as a "protest," and suggested he and his group move to another part of the park where attendees would not be exposed to their message. (ROA. 11, 36). Oliver declined the invitation, however, reminding the police officers of his constitutional right to speak on the public ways, and the officers relented. (ROA 11, 36).

### *Brandon Passes § 50-45 to Curb Olivier's Religious Speech*

Following these exchanges with Olivier, on December 2, 2019, Brandon passed ordinance § 50-45 entitled: "Designating a protest area and related provisions during events at the Brandon Amphitheater" designed to curb religious speech. (ROA. 11-13, 46-47; RE. 29-30). Section 50-45 reads:

**Sec. 50-45. Designating a protest area and related provisions regarding public protests/demonstrations during events at the Brandon Amphitheater.**

(a) Three hours prior to the opening of the Brandon Amphitheater to event attendees for a live ticket concert event ("event") and one hour after the conclusion of the event, individuals and/or groups engaging in public protests and/or demonstrations, regardless of the content and/or expression thereof, are prohibited within the restricted area shown in exhibit "A" attached hereto, except in the designated protest area as shown on exhibit "A" attached hereto.

3

(b) The protest area is available to individuals and/or groups during the time specified in subsection (a) above, without the necessity of pre-notice or permit, subject to the following terms and conditions:

(1) All individuals and/or groups shall be and remain wholly within the protest area while actively engaged in public protests and/or demonstrations. Vehicles are prohibited in the protest area;

(2) The use of lasers, blinking or blinding lights, electric drums, or other amplified percussion or musical instruments, or equipment except as provided herein-below, is prohibited;

(3) The use of a megaphone and/or loudspeaker which is clearly audible more than 100 feet from where the protest area is located is prohibited;

(4) Libel, slander, obscenities, and/or speech than incites imminent violence or law breaking is prohibited;

(5) The use of ladders, step stools, tables, chairs, buckets and/or any other object or thing that is customarily used to heighten an individual from the ground is prohibited;

(6) Temporary signs are permitted; however, wooden, or metal signs or sign stakes made from hard material that may be used as a weapon are prohibited. All signs must be hand-held and shall not be affixed to anything in the protest area or otherwise affixed to the protest area. The top of any sign may not be elevated more than four feet beyond the height of its holder.

(7) Anything brought onto the protest area shall be removed within 75 minutes of the conclusion of an event.

(8) Each group shall have a representative who shall be present at all times while the group is, in whole or in part, within the protest area. The representative shall, when reasonably requested by the chief of police and/or his designee, provide photo identification.

Individuals who are engaged in a demonstration and/or protest shall maintain on their possession while in the protest area photo identification and provide the same to the chief of police and/or his designee as and when reasonably requested. Requests for identification by the chief of police and/or his designee shall only be made in the event of a credible complaint and/or an observed violation of the provisions herein or other applicable federal or state law or municipal ordinance.

4

(c) In the event of a violation of the provisions herein, in addition to the general fines and penalties provided in section 1-12 of the Code of Ordinances of the City of Brandon, the offending individual will be removed from the protest area and is not be permitted to return to the protest area during the event on the day of the violation and if the same individual violates the provisions herein again during an event in the same calendar year, the individual shall be removed from the protest area and is not be permitted to return to the protest area during any event for the remainder of that calendar year.

Exhibit "A"



(ROA. 46-47; RE. 29-30).

Via § 50-45, Brandon relegates any expressive activity considered a protest or demonstration to a designated, remote "protest" area during amphitheater event

days and precludes any such expressive activity from occurring outside the "protest" area. (ROA. 46; RE. 29). The protest area is located about 265 feet away from the public sidewalks where Olivier wishes to engage in his religious speech. (ROA. 16, 38-39). Within the protest area, § 50-45 requires that all signs be hand-held signs without poles or sticks and prohibits individuals from holding signs such that the top of the sign is any higher than 4 feet above the height of the holder. (ROA. 46; RE. 29). Nor does the ordinance allow anyone to elevate a sign by standing on a step stool. (ROA 46; RE. 29). Section 50-45 further precludes amplified speech audible beyond 100 feet of the device. (ROA 46; RE. 29).

### Brandon Applies § 50-45 to Eviscerate Olivier's Religious Speech on Public Ways Outside Brandon Amphitheater

Because of a string of COVID 19-related cancellation of events in 2020 and 2021, Olivier did not encounter § 50-45 until he visited Quarry Park on May 1, 2021, the day of a Lee Brice concert. (ROA. 14, 36). He had read the new ordinance regulating speech in Quarry Park but doubted Brandon police would restrict his protected speech on public ways. (ROA. 14, 36-37).

Olivier parked in lot B in Quarry Park at around 6:00 p.m. that evening, about an hour and a half before concert was scheduled to start, planning to meet up with family and friends. (ROA. 14, 37). He and others in his group wore expressive clothing, and brought signs, gospel literature, and a hand-held amplification device. (ROA. 14, 37). They intended to walk to sidewalks near the intersection and share

6

their message, but Chief William A. Thompson, Jr. and another Brandon police officer approached them in a golf cart almost as soon as they arrived (as though they were waiting on them).  (ROA. 15, 37, 504 [Ex. F, DVD]).

Chief Thompson apprised Olivier of § 50-45, and handed him a copy of the ordinance with a map revealing the designated area for his group's speech.  (ROA. 15, 37, 504 [Ex. F, DVD]).  The chief informed Olivier that Brandon had set up a "special" spot for them that Olivier could not be seen from where they were standing. (ROA. 15, 37-38, 504 [Ex. F, DVD]).  He added that Oliver and company should not hear from the police provided they follow the rules. (ROA. 15, 38, 504 [Ex. F, DVD]).

Olivier decided to check out the "special" spot Brandon set aside for the group, hoping the space would be near the intersection of Boyce Thompson Drive and Rock Way.  (ROA. 15, 38).  But upon walking from the parking lot and reaching Boyce Thompson Drive, Olivier did not notice any designated space close to the intersection near Rock Way. (ROA. 15-16, 38).  He and the others eventually spotted a marked-off space sitting hundreds of feet to the west of them and walked in that direction. (ROA. 16, 38-39, 504 [Ex. G, DVD]).  Drawing closer to the designated space, Olivier inspected it and confirmed the spot was the "protest" area set out in § 50-45 and map, seeing a sign bearing rules for the protest area and ropes marking off boundaries for the spot.  (ROA. 16, 39, 504 [Ex. G, DVD]).  The "protest" area

7

is approximately 29 by 16 feet in size.  (ROA. 16, 39).

Olivier determined that the designated space was unworkable for his or anyone else's speech. (ROA. 16, 39).  The location placed him and the others too far from pedestrian traffic flow to effectively communicate to them.  (ROA. 16-17, 39).  Stuck in this box, Olivier could not hand out literature or speak with people.  (ROA. 17, 39-40).  He and his group's expressive shirts were nullified because pedestrians were not close enough to see and read them.  (ROA. 17, 40).  Olivier also discerned he could not use signs or banners effectively in the "protest" area. (ROA. 17, 40).  As made explicit in the posted rules, he was precluded from using poles or a step stool or anything else to elevate his signs to make them readable.  (ROA. 17, 40, 46-47).  He had one hand-held sign of 2 x 1 ½ feet but was not allowed to lift that sign any higher than 4 feet beyond his height. (ROA. 17, 40).  Neither could Olivier realistically preach in the protest area.  (ROA. 17-18, 40).  Yet another rule in the ordinance bars amplification heard from 100 feet away and virtually all attendees traverse well over 100 feet away from the "protest" area. (ROA. 17-18, 40, 46-47).

Olivier wondered if they had to stay in the "protest" area since they intended to evangelize, not protest, that evening. (ROA. 18, 41).  Olivier also believed the restriction was unconstitutional.  (ROA. 18).  Wanting to go to a place where their message could be received, Olivier and the others walked from the protest area down to their desired spots off of Boyce Thompson Drive near the intersection with Rock

Way.  (ROA. 18, 41).

When they reached the intersection, another Brandon police officer met Olivier and company, and promptly reminded them of § 50-45 and the spot Brandon designated for their speech. (ROA. 18, 41, 504 [Ex. H, DVD]). Olivier asked the police officer if he could confirm the road and adjacent sidewalks are public property, and he did so, but insisted Oliver go back to the designated space to continue with his speech anyway.  (ROA. 18, 41, 504 [Ex. H, DVD]).  Olivier explained they were not participating in a "protest" and could not reach anyone from the "protest" area, but to no avail. (ROA. 19, 41, 504 [Ex. H, DVD]). The officer called Chief Thompson and alerted to him Olivier's presence. (ROA. 19, 41, 504 [Ex. H, DVD]).

Convinced of his and the group's right to speak in the public spaces, Olivier encouraged others to convey their message while they waited on Chief Thompson, reminding them to stay on edge of sidewalk to avoid interference with pedestrian traffic flow.  (ROA. 19, 41-42, 504 [Ex. H, DVD]). They preached and held up a banner.  (ROA. 41-42, 504 [Ex. H, DVD]).  And soon, Chief Thompson drove up in his golf cart to meet Olivier. (ROA. 19, 42, 504 [Ex. H, DVD]).  The chief warned Olivier that he had to enforce the ordinance and the ordinance required Olivier and company go back to the designated area.  (ROA. 19, 42, 504 [Ex. H, DVD]).

Olivier informed the chief of his conviction to share the gospel and that he

9

could not effectively conduct this expressive activity in a space situated so far from pedestrian traffic.  (ROA. 19, 42, 504 [Ex. H, DVD]).  He pointed out to the chief that they were not protesting. (ROA. 19, 42, 504 [Ex. H, DVD]).  Unfazed, the chief retorted that the police do not make laws but enforce them.  (ROA. 20, 42, 504 [Ex. H, DVD]).  The chief warned Olivier to go back to the designated protest area or leave the area altogether.  (ROA. 20, 42, 504 [Ex. H, DVD]).

Olivier was willing to comply with the chief's directive but was troubled by the infringement on their constitutional rights. (ROA. 20, 42).  He asked Chief Thompson if he could confirm Boyce Thompson Drive and the sidewalks on both sides of the street are public, and he did. (ROA. 20, 42-43, [Ex. H, DVD]).  Olivier advised the chief he was trying to figure out what to do, but was confused by the directive, failing to see how Brandon could prohibit speech on the public way. (ROA. 20, 42-43, 504 [Ex. H, DVD]).

The chief did not indicate a willingness to discuss the constitutional propriety of the ordinance, reiterating Olivier's options to him.  (ROA. 20, 43, 504 [Ex. H, DVD]).  Olivier asked Chief Thompson whether he was threatening him with arrest and the chief confirmed the threat. (ROA. 20, 43, 504 [Ex. H, DVD]).  Troubled by the stance, Olivier asked the chief to confirm that he would really arrest someone for speaking on a public sidewalk.  (ROA. 20, 43, 504 [Ex. H, DVD]).  But, by this juncture, Chief Thompson was no longer willing to engage with Olivier.   The chief

10

arrested Olivier's friend, ordered another police officer to arrest Olivier, and warned others in Olivier's group to leave to avoid the same fate. (ROA. 20-21, 43, 504 [Ex. H, DVD]).

Olivier subsequently appeared in Brandon municipal court for the charge of violating § 50-45, engaging in protest or demonstration outside the designated area. (ROA. 21). He pled *nolo contendere* (no contest) to the charge and paid a fine totaling $304.00. (ROA. 21, 44, 49, 394-396).

Following this incident, Olivier's desire to share his religious message on public ways bordering Boyce Thompson Drive near the intersection with Rock Way has not waned. (ROA. 21-22, 44). He wants to go back to Quarry Park and evangelize on amphitheater event days, but Brandon's demonstrable willingness to enforce § 50-45 against his speech and arrest him for violating the ordinance chills and deters him from coming and sharing his beliefs. (ROA. 21-22, 44). Olivier refrains from exercising his free speech in traditional public fora due to fear of criminal arrest and sanction. (ROA. 22, 44).

### *Olivier Pursues Relief in Federal Court*

To obtain relief from the ongoing dilemma, on October 6, 2021, Olivier filed verified complaint against Brandon and Chief Thompson, challenging § 50-45 and its application to his signs, literature, conversation, and oral dialogue on public ways. (ROA. 7-26). On the same date, Olivier filed a motion for preliminary injunction,

11

along with exhibits and memorandum, to enjoin Brandon and Chief Thompson from applying § 50-45 to his religious speech. (ROA. 31-69). Brandon and Chief Thompson subsequently filed an answer (ROA. 85-97) and a response in opposition to motion for preliminary injunction, with accompanying exhibits and memorandum. (ROA. 103-459, 463-464). In their response, Brandon and Chief Thompson specified the *Heck v. Humphrey* doctrine along with many other arguments as purported basis for denying the motion. A few weeks later, on November 29, 2021, Olivier followed with his reply. (ROA. 473-504).

Subsequently, on December 10, 2021, Brandon and Chief Thompson filed motion for judgment on the pleadings, or, alternatively, for summary judgment, relying on same exhibits they submitted in response to Olivier's motion for preliminary injunction. (ROA. 507-540). In argumentation, Brandon and Chief Thompson largely regurgitate their response to the motion for preliminary injunction, including the *Heck* argument. (ROA. 507-540). The motion included a qualified immunity defense for Chief Thompson, and thus on December 14, 2021, the court below entered an order staying all discovery in this cause. (ROA. 544-545).

On January 14, 2022, Olivier tendered his opposition to the alternative motions, countering the merits of the arguments, including the *Heck* argument. (ROA. 547-578). Several weeks later, Brandon and Chief Thompson filed a reply

12

in support. (ROA. 591-604). Because the reply exceeded the page limitations of local rules, the district court entered an order allowing Olivier a chance to file a sur-reply (ROA. 612-613), and on September 8, 2022, Olivier filed his sur-reply. (ROA. 614-624).

Not long after, on September 22, 2022, Olivier filed a motion for leave to file an amended complaint to add Spring Siders as a party plaintiff and additional allegations. (ROA. 625-665). The proposed amended complaint did not specify any new events, new theories, or add any new causes of action, but sought to add an interested party who was not arrested or convicted and to eliminate a claim for compensatory damages against Brandon and Chief Thompson. (ROA. 629-651).

### District Court's Ruling on Pending Motions and Olivier's Appeal

The very next day, September 23, 2022, the district court entered an Order granting Brandon's and Chief Thompson's motion for judgment on the pleadings, or, alternatively, for summary judgment, and denying Olivier's motion for preliminary injunction, dismissing the entirety of Olivier's cause of action. (ROA. 666-685; RE. 9-28). In granting the alternative motion, the lower court did not indicate which motion it was granting. (ROA. 666-685; RE. 9-28). The *Heck v. Humphrey* doctrine served as the sole basis for the ruling, with the court surmising: "A finding by this court … that the Subject Ordinance is facially unconstitutional would, therefore, undermine [Olivier's] Municipal Court conviction; a conviction

which has not been terminated in his favor." (ROA. 684; RE. 27). For the same reason, the district court denied Olivier's motion for preliminary injunction. (ROA. 684-685; RE. 27-28). The court did not address the merits of Olivier's claims or rule on Olivier's motion for leave to file an amended complaint. (ROA. 666-685; RE. 9-28).

Subsequently, on October 19, 2022, Olivier filed a timely notice of appeal from this Order dismissing his claim. (ROA. 693-694; RE. 7-8). On appeal, Olivier seeks prospective relief from Brandon.

## SUMMARY OF ARGUMENT

"Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939). An important corollary to this right to speak in public places is access to a federal court to protect the right against on-going threats. But Olivier has been deprived of this access due to an extraordinary and erroneous application of the *Heck v. Humphrey* doctrine by the court below.

The district court misconstrued the *Heck* ruling to bar Olivier from securing an injunction that would prevent Brandon from applying an unconstitutional ordinance - outlawing protected speech in traditional public fora - against Olivier in

14

the future. The *Heck* doctrine cannot work to keep litigants from obtaining prospective relief having no effect on the underlying conviction or sentence. Olivier's sought-after relief would not necessarily imply the invalidity of the underlying conviction or fine he paid. Neither *Heck* nor any other preclusion or abstention doctrine dealing with the interplay between federal and state courts can be used to block Olivier's fundamental right to access federal court.

On appeal, Olivier asks this Court to reverse the ruling of the court below to the extent it precludes his prospective relief. Olivier also asks this Court to direct the district court to entertain his motion for preliminary injunction on the merits, enabling Olivier to secure the relief he needs as soon as practicable.

## STANDARD OF REVIEW

Brandon filed what it called motion for judgment on the pleadings, or alternatively, for summary judgment. Ruling in Brandon's favor, the lower court did not expound on whether it was granting the motion to dismiss or the motion for summary judgment, but no matter which motion was granted, this Court should review the order below *de novo*. This Court reviews rulings on dispositive motions, like dismissals and summary judgments, *de novo*. *GWTP Invs., L.P. v. SES Americom, Inc.,* 497 F.3d 478, 481 (5th Cir. 2007).

The standard for dismissal via judgment on the pleadings is "the same as that for dismissal for failure to state a claim under Rule 12(b)(6)." *Johnson v. Johnson*,

15

385 F.3d 503, 529 (5th Cir. 2004). To survive a motion for judgment on the pleadings (like a motion to dismiss), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). In reviewing the district court's grant of a motion for judgment on the pleadings, this Court must accept all well-pleaded facts as true and view these facts in the light most favorable to the plaintiff. *Edionwe*, 860 F.3d at 291. The motion is warranted "only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

As for the motion for summary judgment, this Court applies the same standard as the district court. *In re Louisiana Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if the fact-finder can return a verdict for the nonmoving party. *Brackeen v. Haaland*, 994 F.3d 249, 290 (5th Cir. 2021). All reasonable inferences are construed in the

16

light most favorable to the party opposing summary judgment, and any doubt is resolved in favor of the non-moving party. *Crawfish Producers*, 852 F.3d at 462.

## **ARGUMENT**

Olivier seeks reversal of the district court's order dismissing his claim for prospective relief, injunctive relief.[2] The lower court's deduction that *Heck v. Humphrey*, 512 U.S. 477 (1994) bars his prospective claim is novel, extending the *Heck* doctrine well beyond its intended moorings.

A civil rights plaintiff is not typically required to exhaust remedies in state court to pursue a § 1983 claim. *Patsy v. Board of Regents*, 457 U.S. 496, 500 (1982). An exception to this general rule exists when a § 1983 action overlaps with a chance for a habeas corpus proceeding, obliging prisoners to proceed with habeas corpus relief to challenge their conviction or confinement. *Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973). Prisoners remain free, however, to carry on with civil rights claims that do not implicate this state remedy. *Wolff v. McDonell*, 418 U.S. 539, 553-54 (1974).

In *Heck*, the Supreme Court crystalized that a prisoner cannot assert a § 1983 claim for damages challenging a conviction or sentence unless the conviction or

---

[2] On this appeal, Olivier is not pursuing any retrospective relief or any claim against Chief Thompson. His claim is solely for prospective relief and solely against Brandon.

sentence has been overturned. 512 U.S. at 486-87. Fixated on collateral attacks on criminal convictions and sentencing, the *Heck* Court stressed that its ruling was limited to claims which "necessarily imply the invalidity of the conviction or sentence." *Id*. at 487. Essentially, *Heck* established a "habeas exhaustion rule" for civil rights plaintiffs. *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004) (per curiam). *See Black v. Hathaway*, 616 F. App'x 650, 651-52 (5th Cir. 2015) ("In *Heck*, the Supreme Court addressed the intersection between § 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254"). The *Heck* doctrine functions to preserve comity between federal and state courts. Its bar is not triggered by a constitutional claim that fails to threaten the underlying conviction or duration of sentence. *Muhammed*, 540 U.S. at 751.

Whether a § 1983 claim sufficiently attacks an underlying conviction or sentence to preclude the claim is a fact-intensive inquiry. *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020). A court "focus[es] on whether success on the claim requires negation of an element of the criminal offense or proof of a fact that is inherently inconsistent with one underlying the criminal conviction." *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (citation omitted). "[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed…." *Heck*, 512 U.S. at 487 (emphasis in original).

18

This analysis resolves in favor of allowing Olivier's claim. He does not challenge his sentencing, having none to challenge. Nor does he seek to overturn his *nolo contendere* plea or conviction, either directly or indirectly. The relief he seeks to secure would not affect the prior conviction. Rather, Olivier's challenge deals entirely with the constitutionality of the ordinance and its application to his religious speech in the future. He does not bring claims for false arrest or malicious prosecution. Therefore, no conceivable ruling from the court could negate an element of the offense or establish a fact inconsistent with the criminal conviction.

The *Heck* bar does not typically apply to claims for prospective relief because they do not typically affect the underlying criminal conviction or sentencing. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Olivier's pursuit for injunctive relief in this matter is no exception to the general understanding. His sought-after relief is forward-looking, having no effect on his conviction. To read *Heck* to apply to Olivier's prospective claim betrays its holding and well-established principles of comity. *See Skinner v. Switzer*, 562 U.S. 521, 534 (2011) (*Heck* has never worked to bar a claim when "the relief sought would neither terminate custody, accelerate the future date of release from custody, nor reduce the level of custody") (citation and internal quotation marks omitted). Consistent with Supreme Court precedent on the interplay between federal and state courts, a bar on a § 1983 claim is unwarranted "when the relief sought is wholly prospective" and "in no way designed to annul"

19

the results of the state court. *Wooley v. Maynard*, 430 U.S. 705, 711, 719 (1977).

## I.    OLIVIER'S PROSPECTIVE RELIEF DOES NOT NECESSARILY IMPLY INVALIDITY OF HIS CONVICTION

Olivier seeks injunctive relief enjoining Brandon from enforcing § 50-45 against him so he can be free to share his religious beliefs on public ways outside the Brandon Amphitheater at future events. This relief is apt and fitting, and yet, the district court kept Olivier from pursuing this relief through invocation of the *Heck* doctrine. At the happenstance of Olivier paying a fine for violating an unconstitutional ordinance, the court thwarts his capacity to ever challenge this ordinance, no matter how many times the ordinance is applied to him to muzzle his protected speech.

The district court wrongly applied *Heck* to Olivier's request for prospective relief. "*Heck* prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid." *Aucoin*, 958 F3d at 382. The word "necessarily" is key to this inquiry. A mere possibility that a favorable ruling might set the stage for a separate action overturning a prior conviction is not enough because *Heck* does not extend this far. *See Skinner*, 562 U.S. at 534 (concluding a claim is not barred by *Heck* simply because the "ultimate aim" may serve as a springboard for challenging the conviction).

For this reason, "[o]rdinarily, a prayer for prospective relief will not necessarily imply the invalidity of a [conviction or sentence], and so may properly

be brought under § 1983." *Edwards*, 520 U.S. at 648 (citation and internal quotation marks omitted). Indeed, the holding in *Heck* does not speak to or contemplate prospective relief, just damages. 512 U.S. at 486. In *Edwards*, the Supreme Court held that while a prisoner could not seek declaratory judgment on prior application of procedures, he could seek injunctive relief barring application of those same procedures again. 520 U.S. at 648-49. Similarly, in *Wilkinson v. Dotson*, the Supreme Court held plaintiffs there could seek a prospective injunction compelling the state to comply with parole proceedings in the future, concluding that claims for future relief, if successful, would not necessarily imply invalidity of confinement. 544 U.S. 74, 81 (2005).

True to the binding precedent, this Court has never applied *Heck* to prospective relief except when that relief is inextricably intertwined with an accompanying damages claim for retrospective relief directly affecting the conviction or sentencing. *See, e.g., Clarke v. Stadler*, 154 F.3d 186, 189-90 (5th Cir. 1998) (holding request that "no threats" portion of a prison rule be declared facially unconstitutional was so intertwined with request for restoration of lost good-time credits that the resolution of the constitutional issue necessarily dictated the ruling on the damages issue). In *Aucoin*, this Court considered a § 1983 claim for two separate incidents of excessive force, first when the alleged misconduct occurred and second during a time after his misconduct had ceased. 958 F.3d at 380-81. The

21

Court held the claim involving the alleged misconduct was barred by *Heck* because factual allegations about the incident were necessarily inconsistent with the conviction. *Id*. at 383. But this Court viewed the second claim in a different light, deeming *Heck* inapplicable, because the later incident posed no conflict with the factual underpinnings of the original misconduct. *Id*. at 382-83. "Put simply, there is no *Heck* bar if the alleged violation occurs 'after' the cessation of the plaintiff's misconduct that gave rise to his prior conviction." *Id.* at 382.

A recent decision from Ninth Circuit, *Martin v. City of Boise*, is also instructive on *Heck's* inapplicability to prospective relief having no impact on the initial incident. 920 F.3d 584 (9th Cir. 2019). That case involved a constitutional challenge to a city law curbing sleeping and camping in public places. *Id.* at 603-04. A group of homeless individuals brought the action, seeking retrospective relief for citations they received under the ordinance. *Id.* at 604. Two of the plaintiffs also sought injunctive relief to avoid future prosecutions under the same ordinance. *Id.* Holding the *Heck* doctrine precluded the retrospective relief, but not the prospective relief, the appellate court reasoned: "The *Heck* doctrine... serves to ensure the finality of and validity of prior convictions, not to insulate future prosecutions from challenge." *Id.* at 614-15.

Applying these constitutional principles to this matter, *Heck* poses no obstacle for Olivier's claim. He seeks prospective relief. While a claim for damages

22

stemming from the incident when he was arrested could raise some *Heck* concerns, his claim for injunctive relief - relating to his desire to speak after the subject incident - does not activate the *Heck* bar.

The district court, in finding *Heck* precludes the entirety of Olivier's § 1983 claims, failed to specifically address the suitability of applying *Heck* to his prospective relief - despite the court denying his request for preliminary injunction in the same ruling. (ROA. 684-685; RE. 27-28). The court below only referenced *Heck's* preclusive effect on damages and associated declaratory relief. (*E.g.*, ROA. 682; RE. 17 "Explained another way, *Heck* states actions for *damages* 'that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement' are not cognizable under § 1983 unless the conviction or sentence that forms the basis of his claim has been invalidated") (emphasis supplied). The oversight is notable, reflecting a lack of supporting authority for the portion of the district court's ruling that bars Olivier's prospective relief.

Applying *Heck* to discrete § 1983 claims for prospective relief leads to perverse results, such as that rendered by the lower court. "[A]dopting the City's position [on *Heck*] would essentially insulate the laws from challenge." *Gbalazeh v. City of Dallas, Texas*, 394 F.Supp.3d 666, 671 (N.D. Tex. 2019). As Judge Godbey in the Northern District of Texas observed, the (il)logic of this contention presents an impossible predicament for individuals charged under an unconstitutional

23

ordinance (like Olivier). *Id.* Those who opt to pay the fine forever forego their right to challenge the law along with their constitutional freedoms. *Id.* Such individuals "would seemingly have to submit to custody and try their luck with a habeas petition" to challenge the unconstitutional condition. *Id.*

The district court's distorted approach to *Heck* finds no support in *Heck* itself, its progeny, or in any decisions of this Court.

## II. ALLOWING *HECK* TO BAR PROSECTIVE RELIEF UNCONNECTED TO OLIVIER'S CONVICTION DEPARTS FROM SUPREME COURT JURISPRUDENCE ON THE INTERPLAY BETWEEN FEDERAL AND STATE COURTS

Wielding *Heck* to preclude requests for prospective relief is further inconsistent with long-established Supreme Court precedent on the delicate balance between federal and state court power.

Over the years, the Supreme Court has developed various doctrines to address the unique scenarios when federal litigation might interfere with state-court proceedings. *See District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (*Rooker-Feldman* doctrine); *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) (*Colorado River* abstention); *Younger v. Harris*, 401 U.S. 37 (1971) (*Younger* abstention); *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) (*Buford* abstention); *R.R. Commission v. Pullman Co.*, 312 U.S. 496 (1941) (*Pullman* abstention). These preclusion and abstention doctrines are intended to square the importance of comity with the "competing need to vindicate federal

rights." *Wilkinson*, 544 U.S. at 84; *see New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989) ("There is no greater federal interest…than in enforcing the supremacy of explicit constitutional guarantees, and constitutional challenges to state action…call into question the legitimacy of the State's interest in its proceedings reviewing or enforcing that action."). None of these doctrines prevent litigants from obtaining prospective relief, especially, when the relief is "necessary to afford adequate protection of constitutional rights." *Spielman Motor Co. v. Dodge*, 295 U.S. 89, 95 (1935). *See Skinner*, 562 U.S. at 532 ("[A] state-court decision is not reviewable by lower federal courts, but a statute or rule governing the decision may be challenged in a federal action"); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005) (*"*When there is parallel state and federal litigation, *Rooker-Feldman* is not triggered simply by the entry of judgment in state court"); *New Orleans Pub. Serv.,Inc.*, 491 U.S. at 372 ("As a challenge to completed legislative action, New Orleans Pub.Serv.,Inc's, suit represents neither the interference with ongoing judicial proceedings against which [abstention] was directed…. It is, insofar as our policies of federal comity are concerned, no different in substance from a facial challenge to an allegedly unconstitutional statute or zoning ordinance—which we would assuredly not require to be brought in state courts."); *Wooley*, 430 U.S. at 710-11 (holding litigants entitled to federal forum to pursue federal remedy despite existence of criminal convictions);

25

*O'Shea v. Littleton*, 414 U.S. 488, 500 (1974) (observing an injunction that "strike[s] down a single state statute, either on its face or as applied," would not run afoul of abstention doctrine); *BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 (5th Cir. 1977) (citing *Wisconsin v. Constantineau*, 400 U.S. 433 (1971)) (abstention of federal court is improper "where a state statute can be challenged under essentially identical state and federal constitutional provisions…").

*Wooley* is particularly insightful, demonstrating the proper relationship between federal and state courts when dealing with constitutional claims for prospective relief.  There, Plaintiffs George and Maxine Maynard brought a § 1983 action for declaratory and injunctive relief against enforcement of a New Hampshire statute making it a crime to obscure the words "Live Free or Die" on state license plates.  430 U.S. at 709.  Finding the state motto repugnant, George Maynard covered up the words and was charged, convicted, and sentenced for violating the statute on three separate occasions. *Id.* at 708.  New Hampshire contended Maynard was precluded from brining his claim against the statute because - as here - he did not seek review of his criminal convictions. *Id.* at 709-10.   But the Supreme Court refused to bar the claim. *Id.* at 711.  Despite his convictions and sentencing for prior offenses in state court, Maynard was allowed to challenge the statute for prospective relief in federal court. *Id.*

The supreme court reasoned Maynard's federal cause of action was not

26

"designed to annul the results of a state trial" since the relief sought – avoidance of more prosecution under a statute alleged to violate his constitutional rights – was prospective in nature. *Id.* Maynard did not wish to have his record expunged or dissolve any collateral effects of his prior convictions, but wanted to prevent future prosecutions under the statue. *Id.* And considering the relief sought, the Supreme Court permitted Maynard to go forward with his claim. *Id.* The same analysis should apply here and to other situations in which prospective relief does not alter prior convictions. *See Association of Am. Railroads v Beshear,* No. 3:18-CV-00028-GFVT, 2019 WL 1371839, AT * 4 (E. D. KY. MAR. 26, 2019) (holding *Heck* inapplicable to prospective relief, despite plaintiff being previously convicted in state court, observing the *Wooley* ruling).  Like Maynard, Olivier seeks relief that is prospective, intended to preclude further prosecution under an unconstitutional ordinance.

Wooley and other Supreme Court precedent has made clear - over decades of jurisprudence - that litigants seeking prospective relief should be afforded access and protection in federal court whenever they stand to lose their constitutional rights. *Skinner*, 562 U.S. at 532; *Exxon Mobile*, 544 U.S. at 293; *New Orleans Pub. Serv., Inc. (NOPSI)*, 491 U.S. at 372; *O'Shea*, 414 U.S. at 500; *Wooley*, 430 U.S. at 711; *BT Inv. Managers, Inc.*, 559 F.2d at 954.  This Court should not view *Heck* as an outlier to this preeminent constitutional principle.

## CONCLUSION

As discussed above, *Heck* cannot hinder Olivier's merited claim for prospective relief in this cause.  The district court erred in finding otherwise.  Thus, Olivier requests that this Court reverse the decision of the court below, reinstate Olivier's claim for prospective relief against Brandon, and instruct the district court to entertain Olivier's motion for preliminary injunction on the merits.

Respectfully submitted this 4th day of January 2023.

/s/ Nathan W. Kellum
Nathan W. Kellum
TN Bar No. 013482; MS Bar No. 8813
CENTER FOR RELIGIOUS EXPRESSION
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117
(901) 684-5485
(901) 684-5499 (fax)
nkellum@crelaw.org

ATTORNEY FOR APPELLANT
GABRIEL OLIVIER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the foregoing Brief of Plaintiff-Appellant has been served on counsel for Defendant-Appellee, through the CM/ECF system this 4th day of January 2023.

/s/ Nathan W. Kellum
Nathan W. Kellum

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,689 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 software in 14 point Times New Roman font.

/s/ Nathan W. Kellum
 Nathan W. Kellum
Attorney for Plaintiff-Appellant
Dated:  January 4, 2023