No. 22-60566

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————————————————

GABRIEL OLIVIER,

Plaintiff - Appellant,

v.

CITY OF BRANDON, MISSISSIPPI; WILLIAM A. THOMPSON,
individually and in his official capacity as Chief of Police for
Brandon Police Department,

Defendants - Appellees.

————————————————

Appeal from the United States District Court
Southern District of Mississippi

————————————————

## APPELLANT'S PETITION FOR REHEARING EN BANC

————————————————

Nathan W. Kellum
Center For Religious Expression
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117
(901) 684-5485

**Attorney for Appellant**

## **5TH CIR. R. 28.2.1 CERTIFICATE OF INTERESTED PERSONS**

(1) No. 22-60566, *Gabriel Olivier v. City of Brandon, Mississippi*

(2) The undersigned counsel of record certifies that the following listed persons
and entities as described in the fourth sentence of Rule 28.2.1 have an interest
in the outcome of the case.  These representations are made in order that the
judges of this court may evaluate possible disqualification or recusal.

    a.  Plaintiff-Appellant Gabriel Olivier states that he is not a subsidiary
or an affiliate of a publicly owned corporation.

    b.  On behalf of Plaintiff-Appellant, the following attorney associated
with the law firm Center for Religious Expression has appeared:
Nathan W. Kellum.

    c.  Defendant-Appellee City of Brandon, Mississippi is not a subsidiary
or an affiliate of a publicly owned corporation.

    d.  Defendant William A. Thompson, Jr. is not a subsidiary or an
affiliate of a publicly owned corporation.

    e.  On behalf of Defendant-Appellee, the following attorneys have
appeared: G. Todd Butler, Mallory K. Brand.

/s/ Nathan W. Kellum                         September 6, 2023
Nathan W. Kellum, on behalf of               Date
Plaintiff-Appellant

# **FED. R. APP. P. 35(b)(1) STATEMENT**

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is contrary to the following decisions of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court:

*Heck v. Humphrey*, 512 U.S. 477 (1994)

*Wilkinson v. Dotson*, 544 U.S. 74 (2005)

*Skinner v. Switzer*, 562 U.S. 521 (2011)

*Hunter v. Owens*, 375 F. App'x 427 (5th Cir. 2010)

*Parker v. Fort Worth Police Dep't*, 980 F.2d 1023 (5th Cir. 1993)

I express a belief, based on a reasoned and studied professional judgment, that this appeal involves one or more questions of exceptional importance:  It involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Court of Appeals that have addressed the issue, specifically the following cases:

*Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019)

*Galanti v. Nev. Dep't of Corr.*, 65 F.4th 1152 (9th Cir. 2023)

*Griffin v. Baltimore Police Dep't*, 804 F.3d 262 (4th Cir. 2015)

*Cohen v. Longshore*, 621 F.3d 1311 (10th Cir. 2010)

*Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007)

*Harden v. Pataki*, 320 F.3d 1289 (11th Cir. 2003)

*Huang v. Johnson*, 251 F.3d 65 (2d Cir. 2001)

/s/ Nathan W. Kellum
Attorney of Record for Plaintiff-Appellant

# TABLE OF CONTENTS

5TH CIR. R. 28.2.1 CERTIFICATE OF INTERESTED PERSONS ...................... ii

FED. R. APP. P. 35(b)(1) STATEMENT................................................. iii

TABLE OF CONTENTS.........................................................................v

TABLE OF AUTHORITIES ................................................................. vi

STATEMENT OF ISSUES ....................................................................1

STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION......1

STATEMENT OF RELEVANT FACTS .................................................3

INTRODUCTION ...............................................................................7

ARGUMENT .....................................................................................9

    I.    The Panel Opinion Diverges from Supreme Court Precedent
        and Conflicts with Another Fifth Circuit Decision and a
        Sister Circuit Decision by Applying the *Heck* Bar to Claims
        for Purely Prospective Relief ...........................................10

    II.    The Panel Opinion Conflicts with Most Circuits on a
        Question Not Settled by the Supreme Court by Applying
        the *Heck* Bar to a Civil Rights Plaintiff Who Had No
        Opportunity to Pursue Habeas Corpus Relief.....................14

CONCLUSION.................................................................................16

CERTIFICATE OF SERVICE .............................................................17

CERTIFICATE OF COMPLIANCE WITH RULE 35(B)(2).................17

# <u>TABLE OF AUTHORITIES</u>

*Aucoin v. Cupil*,
    958 F3d 379 (5th Cir. 2020) ...........................................................................10

*Black v. Hathaway*,
    616 F. App'x 650 (5th Cir. 2015) ..................................................................15

*Clarke v. Stadler*,
    154 F.3d 186 (5th Cir. 1998) .................................................................. passim

*Cohen v. Longshore*,
    621 F.3d 1311 (10th Cir. 2010) .....................................................................14

*Edwards v. Balisok*,
    520 U.S. 641 (1997)........................................................................................11

*Entzi v. Redmann*,
    485 F.3d 998 (8th Cir. 2007) .........................................................................15

*Figueroa v. Rivera*,
    147 F.3d 77 n. 3 (1st Cir. 1998)....................................................................15

*Galanti v. Nev. Dep't of Corr.*,
    65 F.4th 1152 (9th Cir. 2023) ........................................................................14

*Gbalazeh v City of Dallas*,
    394 F. Supp.3d 666 (N.D. Tex. 2019) ...........................................................13

*Gilles v. Davis*,
    427 F.3d 197 n. 8 (3d Cir. 2005) ...................................................................15

*Griffin v. Baltimore Police Dep't*,
    804 F.3d 692 (4th Cir. 2015) .........................................................................14

*Harden v. Pataki*,
    320 F.3d 1289 (11th Cir. 2003) .....................................................................14

*Heck v. Humphrey*,
512 U.S. 477 (1994)............................................................... passim

*Huang v. Johnson*,
251 F.3d 65 (2d Cir. 2001) ...............................................14

*Hunter v. Owens*,
375 F. App'x 427 (5th Cir. 2010) ........................................ 12, 13

*Martin v. City of Boise*,
920 F.3d 584 (9th Cir. 2019) ...........................................13

*Martin v. Medtronic, Inc.*,
254 F.3d 573 (5th Cir. 2001) ..........................................12

*Muhammad v. Close*,
540 U.S. 749 (2004)..............................................................9, 14

*Nelson v. Campbell*,
541 U.S. 637 (2004).............................................................10

*Parker v. Fort Worth Police Dep't*,
980 F.2d 1023 (5th Cir.1993) ...........................................15

*Powers v. Hamilton Cty. Pub. Def. Comm'n*,
501 F.3d 592 (6th Cir. 2007) ...........................................14

*Randell v. Johnson*,
227 F.3d 300 (5th Cir. 2000) ..........................................15

*Savory v. Cannon*,
947 F.3d 409 (7th Cir. 2020) (*en banc*).........................................15

*Skinner v. Switzer*,
562 U.S. 521 (2011)........................................................ 10, 11, 12

*Spencer v. Kemma*,
523 U.S. 1 (1998)...........................................................14

*Wilkinson v. Dotson*,
    544 U.S. 74 (2005).................................................................................. 11, 12

## STATEMENT OF ISSUES

1.     Can the *Heck v. Humphrey* doctrine bar a civil rights plaintiff's claim for prospective relief?

2.     Can the *Heck v. Humphrey* doctrine bar a civil rights plaintiff's claim when plaintiff never had an opportunity to purse habeas corpus relief?

## STATEMENT OF THE COURSE OF PROCEEDINGS AND DISPOSITION

Plaintiff Gabriel Olivier filed verified complaint against Defendants City of Brandon and Brandon Chief of Police, William Thompson, challenging § 50-45 and its application to his religious expression. (ROA. 7-26).   On the same day, Olivier moved for preliminary injunction to enjoin application of § 50-45 to his speech in the future. (ROA. 31-69).   Brandon and Chief Thompson subsequently filed an answer (ROA. 85-97) and opposition to motion for preliminary injunction (ROA. 103-459, 463-464), which specified the *Heck v. Humphrey* doctrine (on top of many other arguments) as purported basis for denying the motion.   Olivier followed with a reply.   (ROA. 473-504).

Subsequently, Brandon and Chief Thompson filed a motion for judgment on the pleadings, or, alternatively, for summary judgment. (ROA. 507-540).    In argumentation, they largely regurgitated their response to the motion for preliminary injunction, including the *Heck* argument.   (ROA. 507-540).

1

Olivier tendered his opposition to the alternative motions, including the *Heck* argument. (ROA. 547-578). Brandon and Chief Thompson filed a reply in support. (ROA. 591-604). Because the reply exceeded the page limitations of local rules, the district court let Olivier file a sur-reply. (ROA. 612-624). Olivier also moved for leave to file an amended complaint to add Spring Siders as a party plaintiff and additional allegations. (ROA. 625-665). The proposed amended complaint eliminated a claim for damages. (ROA. 629-651).

The next day, on September 23, 2022, the district court entered an Order granting the motion for judgment on the pleadings, or, alternatively, for summary judgment, and denying Olivier's motion for preliminary injunction, dismissing Olivier's cause of action. (ROA. 666-685; RE. 9-28). The *Heck v. Humphrey* doctrine served as the sole basis for the ruling. (ROA. 666-685; RE. 9-28). For the same reason, the lower court denied Olivier's motion for preliminary injunction. (ROA. 684-685; RE. 27-28). The court did not rule on Olivier's motion for leave to file an amended complaint. (ROA. 666-685; RE. 9-28).

Subsequently, on October 19, 2022, Olivier filed a notice of appeal from the Order dismissing his claims. (ROA. 693-694; RE. 7-8). On appeal, Olivier only sought prospective relief and only sought this relief from defendant Brandon. On

August 25, 2023, a Panel of this Court affirmed the district court's decision. *Olivier v. Brandon*, No. 22-60566 (5th Cir. Aug. 25, 2023, slip opinion ["Op"].[1]

## STATEMENT OF RELEVANT FACTS

Olivier is a Christian who wants to spread the gospel of Jesus Christ and other aspects of his faith, like his views on abortion, with others in public. (ROA. 9, 33). In the company of family and friends, Olivier goes to public spots outside of well-attended events and shares his message through signs, literature, expressive clothing, conversation, and preaching. (ROA. 9-10, 33-34). He often uses a hand-held amplifier so he can speak in a conversational tone. (ROA. 10, 34).

Of particular interest, Olivier wants to impart his beliefs on the edge of public sidewalks bordering Boyce Thompson Drive at the intersection with Rock Way in Quarry Park, near the main entryway to the Brandon Amphitheater. (ROA. 10, 35). There he can find a meaningful number of pedestrians with whom to share his message on days when events are taking place at the amphitheater. (ROA. 10, 35). Brandon owns and maintains Boyce Thompson Drive, Quarry Park, and the Brandon Amphitheater. (ROA. 10).

In 2018 and 2019, Olivier visited the public ways bounding Boyce Thompson Drive approximately five or six days during events at the amphitheater to share his

---

[1] Pursuant to Fifth Circuit Rule 35.2.10, a copy of the Panel Opinion is attached as an addendum.

religious message.  (ROA. 11, 35-36).  Several times Brandon police officers depicted Olivier's religious speech as a "protest" and requested he move to another part of the park where attendees would not be exposed to his message.  (ROA. 11, 36).  On these occasions, Oliver reminded the police officers of his constitutional right to speak on the public ways, and the officers relented. (ROA 11, 36).

Following these exchanges, on December 2, 2019, Brandon passed ordinance § 50-45 entitled: "Designating a protest area and related provisions during events at the Brandon Amphitheater" designed to curb religious speech.  (ROA. 11-13, 46-47; RE. 29-30).  Through this ordinance, Brandon relegates any expressive activity officers consider a "protest" or "demonstration" to a designated, remote "protest" area during amphitheater event days, precluding any such expressive activity outside the "protest" area.  (ROA. 46; RE. 29).  The "protest" space is located about 265 feet away from the public sidewalks where Olivier wishes to engage in his religious speech.  (ROA. 16, 38-39).  Within the "protest" area, § 50-45 requires all signs be hand-held signs without poles or sticks and prohibits individuals from holding a sign such that the top of the sign is any higher than 4 feet above the height of the holder.  (ROA. 46; RE. 29).  The ordinance also does not allow anyone to elevate a sign by standing on a step stool.  (ROA 46; RE. 29).  Section 50-45 further precludes amplified speech audible beyond 100 feet of the device. (ROA 46; RE. 29).

Due to COVID 19-related cancellation of amphitheater events in 2020 and

2021, Olivier did not encounter § 50-45 until he visited Quarry Park on May 1, 2021, at a Lee Brice concert. (ROA. 14, 36). He arrived at Quarry Park at around 6:00 p.m. that evening, about an hour and a half before the concert was scheduled to start. (ROA. 14, 37). He and others in his group wore expressive clothing, and carried signs, gospel literature, and an amplification device. (ROA. 14, 37). They intended to walk to sidewalks near the intersection and share their message, but Chief Thompson and another Brandon police officer approached them in a golf cart almost as soon as they arrived. (ROA. 15, 37, 504 [DVD]). The chief apprised Olivier of § 50-45 and handed him a copy of the ordinance with a map revealing the designated area for his group's speech. (ROA. 15, 37. 504 [DVD]). He added that Brandon had set up a "special" spot for their speech. (ROA. 15, 37-38, 504 [DVD]).

Olivier searched out the "special" spot Brandon set aside for them, hoping the space would be near the intersection of Boyce Thompson Drive and Rock Way. (ROA. 15, 38). But he and the others spotted a marked-off space sitting hundreds of feet to the west of the intersection. (ROA. 16, 38-39, 504 [DVD]). Olivier inspected the designated spot and confirmed the spot was the "protest" area set out in § 50-45 and map, seeing a sign and ropes marking off the boundaries. (ROA. 16, 39, 504 [Ex. G, DVD]). Olivier determined the designated space was unworkable for his or anyone else's speech. (ROA. 16-17, 39).

Wanting to go to a place where their message could be received, Olivier and

the others walked from the "protest" area down to their desired spots off Boyce Thompson Drive near the intersection with Rock Way. (ROA. 18, 41). When they reached the intersection, a Brandon police officer reminded them of § 50-45 and the spot Brandon designated for them. (ROA. 18, 41, 504 [DVD]). Olivier explained they were not "protest[ing]" and could not reach anyone from the "protest" area. (ROA. 19, 41, 504 [DVD]). The officer called Chief Thompson to alert him of Olivier's presence. (ROA. 19, 41, 504 [DVD]).

Olivier encouraged others to convey their message while they waited on Chief Thompson, reminding them to stay on edge of sidewalk to avoid interference with pedestrian traffic flow. (ROA. 19, 41-42, 504 [DVD]). Soon thereafter, Chief Thompson arrived. (ROA. 19, 42, 504 [DVD]). Olivier informed the chief of his conviction to share the gospel and that he could not effectively conduct this expressive activity in a space situated so far away from pedestrian traffic. (ROA. 19, 42, 504 [DVD]). He also pointed out to the chief that they were not protesting. (ROA. 19, 42, 504 [DVD]). The chief told Olivier to go back to the designated protest area or leave the park altogether. (ROA. 20, 42, 504 [DVD]).

Olivier was willing to comply but was troubled by the directive. (ROA. 20, 42). He advised the chief he was confused, failing to see how Brandon could prohibit speech on the public way. (ROA. 20, 42-43, 504 [Ex. H, DVD]). The chief declined to discuss the constitutionality of the ordinance and reiterated Olivier's options to

6

him.  (ROA. 20, 43, 504 [Ex. H, DVD]).  Olivier asked Chief Thompson whether he was threatening him with arrest and the chief confirmed the threat.  (ROA. 20, 43, 504 [DVD]).  Concerned about the stance, Olivier asked the chief if he would really arrest someone for speaking on a public sidewalk.  (ROA. 20, 43, 504 [DVD]).  At this juncture, Chief Thompson arrested Olivier's friend and ordered another police officer to arrest Olivier, warning others in Olivier's group to leave to avoid the same fate.  (ROA. 20-21, 43, 504 [Ex. H, DVD]).

Olivier subsequently appeared in Brandon municipal court for the charge of violating § 50-45.  (ROA. 21).  He pled *nolo contendere* (no contest) and paid a fine totaling $304.00. (ROA. 21, 44, 49, 394-396).

Olivier's desire to share his religious message on public ways bordering Boyce Thompson Drive has not waned.  (ROA. 21-22, 44).  He wants to go back to Quarry Park and evangelize on amphitheater event days, but Brandon's demonstrable willingness to enforce § 50-45 against his religious speech and arrest him for violating the ordinance chills and deters him from coming back and sharing his beliefs.  (ROA. 21-22, 44).

## INTRODUCTION

To obtain relief from an unconstitutional ordinance that continuously hinders his protected speech in a public forum, Olivier brought a § 1983 action to challenge and enjoin the ordinance.  But the Panel held Olivier can never obtain this relief

under the preclusion doctrine set out in *Heck v. Humphrey*, 512 U.S. 477 (1994) –
simply because Olivier pled *nolo contendere* to a charge of violating the ordinance
and paid a fine.

The Panel's reliance on the *Heck* doctrine is misplaced, leading to an extreme
result in this case. In *Heck,* the Supreme Court kept a prisoner from pursuing a §
1983 action for damages when he could have sought habeas corpus relief instead.
512 U.S. at 486-87. Straying from this mooring, the Panel extinguished a non-
prisoner's claim for purely injunctive relief.

Regrettably, the Panel's departure from Supreme Court precedent is due in
large part to the Panel's obligation to follow decisions of this Court. In *Clarke v.
Stadler*, 154 F.3d 186 (5th Cir. 1998), sitting *en banc* 25 years ago, this Court ruled
*Heck* applicable to prospective relief. The decision failed to foresee the adverse
ramifications for non-prisoner civil rights plaintiffs, like Olivier, who are subject to
ongoing constitutional violations. In a recent case involving non-prisoner plaintiffs,
the U.S. Court of Appeals for the Ninth Circuit found the *Heck* bar unsuitable for
prospective relief claims. With this renewed opportunity to consider the issue, this
Court should do the same. The full court should weigh in on this matter to ensure
correct and uniform decisions on the applicability of *Heck* to prospective relief. This
issue is also one of fundamental importance, impacting access to federal court and
remedies assured in civil rights legislation. If left undisturbed, the Panel Opinion,

8

along with *Clarke*, will lead to perverse results, insulating unconstitutional laws from merited challenges.

Additionally, *en banc* review would give the Court a chance to retract another erroneous position on *Heck* and to hold the bar does not apply to civil rights plaintiffs who do not have access to habeas corpus relief. In the absence of a direct answer from the Supreme Court on this recurring question, the circuits are split on it, with a majority holding *Heck* inapplicable under these circumstances. This Court presently holds the minority view. But in taking up the issue, this Court can bring its *Heck* jurisprudence in line with the purpose and spirit of *Heck*, and supply much-needed uniformity and clarity on the question.

## ARGUMENT

In *Heck*, the Supreme Court crystalized a prisoner cannot assert a § 1983 claim for damages challenging a conviction or sentence unless it has been overturned. 512 U.S. at 486-87. Fixated on collateral attacks on state criminal convictions and sentencing, the *Heck* Court stressed that its ruling was limited to claims which "necessarily imply the invalidity of the conviction or sentence." *Id*. at 487. Essentially, *Heck* established a "habeas exhaustion rule" for civil rights plaintiffs. *Muhammad v. Close*, 540 U.S. 749, 751-52 (2004) (per curiam). The *Heck* bar is not activated by a constitutional claim that fails to threaten the underlying conviction or duration of a sentence. *Muhammad*, 540 U.S. at 751.

9

Going beyond the bounds of *Heck*, the Panel applied the bar to a § 1983 claim brought by a plaintiff who was never a prisoner, never had a chance to seek habeas corpus, and never sought to throw out the prior conviction, but desires injunctive relief against an ordinance to protect his constitutional rights during future events. The Panel Opinion deviated from *Heck* jurisprudence in two significant ways: I) applied *Heck* to purely prospective relief, and II) applied *Heck* to a civil rights plaintiff who has no path to habeas corpus. Both errors justify *en banc* review.

**I.    The Panel Opinion Diverges from Supreme Court Precedent and Conflicts with another Fifth Circuit Decision and a Sister Circuit Decision by Applying the *Heck* Bar to Claims for Purely Prospective Relief**

The Panel erroneously applied *Heck* to Olivier's request for prospective relief. "*Heck* prohibits suit under § 1983 if success on the claim would necessarily imply that a prior conviction or sentence is invalid." *Aucoin v. Cupil,* 958 F3d 379, 382 (5th Cir. 2020). The word "necessarily" is critical to the inquiry. *Nelson v. Campbell*, 541 U.S. 637, 647 (2004). The mere possibility that a favorable ruling might set the stage for a separate action nullifying a prior conviction is not enough to invoke the *Heck* bar because the *Heck* doctrine does not extend this far. *Skinner v. Switzer*, 562 U.S. 521, 534 (2011).

In *Heck*, the Supreme Court did not contemplate prospective relief, just damages. 512 U.S. at 486. "Ordinarily, a prayer for prospective relief will not necessarily imply the invalidity of a [conviction or sentence], and so may properly

10

be brought under § 1983." *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (citation and internal quotation marks omitted). In *Edwards*, the Supreme Court held while a prisoner was prevented from seeking declaratory judgment on prior application of procedures, he was free under *Heck* to seek injunctive relief barring application of those same procedures in the future. 520 U.S. at 648-49.

This Court, in *Clarke v. Stalder*, analyzed *Edwards* and yet held *Heck* does preclude prospective relief. *Clarke*, 154 F.3d at 189-90. This holding served as the singular basis for the Panel deciding *Heck* prevents Olivier from obtaining prospective relief. In accepting *en banc* review of the Panel Opinion, this Court should reconsider and overrule *Clarke*, or at least distinguish this decision from the case at hand.

*Clarke's* bar on prospective relief is incongruent with *Heck* and its progeny and ought to be overruled. In *Wilkinson v. Dotson*, the Supreme Court held plaintiffs there could seek a prospective injunction compelling the state to comply with parole proceedings in the future, concluding claims for forward-looking relief, if successful, would not necessarily imply invalidity of confinement. 544 U.S. 74, 81 (2005). Similarly, in *Skinner*, the Supreme Court resolved a claim for injunctive relief compelling DNA testing was not barred by *Heck* merely because the ruling could serve as a springboard for challenging the conviction. 562 U.S. at 534.

Considering these binding authorities, the ordinary rule of allowing

11

prospective relief to proceed in the face of a *Heck* defense should have saved Olivier's claim. But in adhering to *Clarke* the Panel held otherwise. While the Panel acknowledged the *Wilkinson* and *Skinner* rulings, and the germane fact that "enjoining a law as unconstitutional may not 'inevitably' lead to the invalidity of the underlying conviction…" (Op. p. 11), it was reluctant to "bridge the gap" between *Clarke* and these decisions because Olivier did not argue *Clarke* is no longer good law. (Op. pp. 11-12). Of course, Olivier could not bring this argument to the Panel since the Panel was unable to overrule an *en banc* decision. *See Martin v. Medtronic, Inc.*, 254 F.3d 573, 577 (5th Cir. 2001) (panel can only overrule if unequivocally dictated by Supreme Court precedent). But it is certainly appropriate for Olivier to ask the full court to overrule *Clarke* and he does with this petition.[2]

The Panel Opinion also revealed the confusion caused by the Court's interpretation of *Heck*, presenting a direct conflict with a prior panel decision. In *Hunter v. Owens*, the plaintiff (Hunter) sought prospective injunctive relief challenging a statute regulating parole review. 375 F. App'x 427, 428 (5th Cir. 2010). Relying on *Wilkinson*, and ignoring *Clarke*, the *Hunter* panel specifically held the prospective claim was not precluded by *Heck*. *Id.* at 429.

The Ninth Circuit addressed the same issue with a backdrop like Olivier's, in

---

[2] The Panel further countered that Olivier's challenge involves the very law that led his conviction. However, this Court did not lend any significance to this circumstance in *Clarke* or in any other decision.

*Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), underscoring the importance of this issue for traditional civil rights claimants. That case involved a constitutional challenge to a city law curbing sleeping and camping in public places. *Id.* at 603-04. A group of homeless individuals brought the action, seeking retrospective relief for citations they received under the ordinance. *Id.* at 604. Two of the plaintiffs, though, also sought prospective relief to avoid future prosecutions under the ordinance. *Id.* Holding the *Heck* doctrine did not preclude the prospective relief, the appellate court observed: "The *Heck* doctrine... serves to ensure the finality of and validity of prior convictions, not to insulate future prosecutions from challenge." *Id.* at 614-15.[3] This Court should affirm the same notion.

Short of overturning *Clarke*, this Court could accept the case *en banc* to clarify *Clarke* and distinguish this ruling from the instant matter. The *Clarke* Court applied *Heck* to injunctive relief in a scenario where the claim was so intertwined with a damages claim that a favorable ruling on the injunction would necessarily imply the invalidity of lost good-time credits. 154 F.3d at 186. Elucidating more on the meaning of *Clarke*, the Court could distinguish Olivier's claims on this basis.

Regardless of the approach taken, this Court should accept *en banc* review to overturn the Panel Opinion, reconcile the conflict with *Hunter v. Owens*, and to clear

---

[3] A district court in this circuit, in *Gbalazeh v. City of Dallas*, 394 F.Supp.3d 666 (N.D. Tex. 2019), adopted the logic of *Martin* in finding *Heck* inapt for prospective relief claims. *Id.* at 670-71.

up confusion about *Heck's* applicability to prospective injunctive claims.

## II.    The Panel Opinion Conflicts with Most Circuits on a Question Not Settled by the Supreme Court by Applying the *Heck* Bar to a Civil Rights Plaintiff Who Had No Opportunity to Pursue Habeas Corpus Relief

The Panel applied *Heck* to a plaintiff who was ineligible for habeas corpus relief. In *Spencer v. Kemma*, 523 U.S. 1 (1998), five justices, in their concurring and dissenting opinions, opined *Heck* could only apply to individuals who had access to habeas corpus relief. *Id*. at 19-21 (Souter, J., concurring, joined by O'Connor, J., Ginsburg, J., and Breyer, J); *id*. at 25 (Stevens, J., concurring). Following *Spencer*, the Supreme Court has not affirmatively resolved whether access to a habeas remedy is required for the *Heck* defense, leaving the question unsettled. *Muhammad*, 540 U.S. at 752 n. 2.

This uncertainty has led to a deep conflict among the circuits. Six circuits, the Second, Fourth, Sixth, Ninth, Tenth, and Eleventh hold *Heck* inappropriate when the plaintiff is ineligible for habeas corpus relief or had no practical opportunity to secure this remedy. *Galanti v. Nev. Dep't of Corr.*, 65 F.4th 1152, 1155-56 (9th Cir. 2023); *Griffin v. Baltimore Police Dep't*, 804 F.3d 692, 696-97 (4th Cir. 2015); *Cohen v. Longshore*, 621 F.3d 1311, 1315-17 (10th Cir. 2010); *Powers v. Hamilton Cty. Pub. Def. Comm'n,* 501 F.3d 592, 599-603 (6th Cir. 2007); *Harden v. Pataki*, 320 F.3d 1289, 1298-99 (11th Cir. 2003); *Huang v. Johnson*, 251 F.3d 65, 75 (2d Cir. 2001). Other the other hand, the First, Third, Seventh, and Eighth circuits have

determined *Heck* applies regardless of habeas recourse whenever the conviction lacks a favorable termination. *Savory v. Cannon*, 947 F.3d 409, 418-28 (7th Cir. 2020) (*en banc*); *Entzi v. Redmann*, 485 F.3d 998, 1003 (8th Cir. 2007); *Gilles v. Davis*, 427 F.3d 197, 209 n. 8, 211 (3d Cir. 2005); *Figueroa v. Rivera*, 147 F.3d 77, 80-81 n. 3 (1st Cir. 1998).

The Fifth Circuit has waffled on the issue over the years. Before *Heck* was decided, this Court ruled a plaintiff could properly bring a § 1983 claim when he was ineligible for a habeas corpus procedure. *Parker v. Fort Worth Police Dep't*, 980 F.2d 1023, 1025 (5th Cir.1993). The *Parker* Court reasoned "that while habeas corpus is the exclusive initial cause of action … this bow to the integrity of the state judicial administration is unnecessary where a section 1983 plaintiff is ineligible for habeas corpus relief." (citation and internal quotation and editing marks omitted). However, following *Heck,* in *Randell v. Johnson*, 227 F.3d 300, 301 (5th Cir. 2000) and later in *Black v. Hathaway*, 616 F. App'x 650, 652-54 (5th Cir. 2015), this Court upheld the *Heck* bar in settings where prisoners are no longer in custody and did not have access to habeas corpus actions.

This Court should accept *en banc* review to answer this separate and important question of whether *Heck* can serve as a bar when the plaintiff is not eligible to seek habeas corpus relief. Doing so, this Court would do well to revert back to its pre-*Heck* position, as the logic of *Parker* still stands.

15

## **CONCLUSION**

The Panel Opinion deviates greatly from *Heck v. Humphrey* and its progeny, barring a non-prisoner with no avenue for habeas relief from enjoining an ordinance that perpetually violates his constitutional rights.  To correct this grievous error, reconcile decisions within this circuit, and harmonize its rulings on the *Heck* doctrine with the Supreme Court and other circuits, this Court should grant *en banc* review.

Respectfully submitted this 6th day of September 2023.

/s/ Nathan W. Kellum
Nathan W. Kellum
TN Bar No. 013482; MS Bar No. 8813
CENTER FOR RELIGIOUS EXPRESSION
699 Oakleaf Office Lane, Suite 107
Memphis, TN  38117
(901) 684-5485, (901) 684-5499 (fax)
nkellum@crelaw.org
ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

The undersigned hereby certifies the foregoing Appellant's Petition for Rehearing En Banc  has been served upon counsel for Defendants-Appellees, through the CM/ECF system this 6th day of September 2023.

/s/ Nathan W. Kellum
Nathan W. Kellum

## CERTIFICATE OF COMPLIANCE WITH RULE 35(b)(2)

1.      This Reply Brief complies with the type-volume limitation of Fed. R. App. P. 35(b)(2)(A) because this brief contains 3,768 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word 2010 software in 14 point Times New Roman font.

/s/ Nathan W. Kellum
 Nathan W. Kellum
Attorney for Plaintiff-Appellant
Dated: September 6th, 2023

# United States Court of Appeals
# for the Fifth Circuit

---

No. 22-60566

---

United States Court of Appeals
Fifth Circuit

**FILED**

August 25, 2023

Lyle W. Cayce
Clerk

Gabriel Olivier,

*Plaintiff—Appellant,*

*versus*

City of Brandon, Mississippi; William A. Thompson,
*individually and in his official capacity as Chief of Police for Brandon Police
Department,*

*Defendants—Appellees.*

---

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:21-CV-636

---

Before Wiener, Graves, and Douglas, *Circuit Judges.*

Dana M. Douglas, *Circuit Judge:*[*]

    In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court established a bar against 42 U.S.C. § 1983 claims that necessarily imply the invalidity of the plaintiff's criminal conviction. The question presented is whether *Heck* also precludes injunctive relief against future enforcement of

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

an allegedly unconstitutional ordinance.  Under the unusual circumstances here, we conclude that it does.

Gabriel Olivier pleaded guilty to violating a local ordinance that redirected protests around an amphitheater to a designated area during live events.  He brought this § 1983 action, seeking to recover damages and to enjoin the ordinance under the First and Fourteenth Amendments.  In *Clarke v. Stalder*, 154 F.3d 186 (5th Cir. 1998) (en banc), we extended *Heck* to bar such relief.

Yet Olivier does not directly challenge *Clarke*.  Instead, he seeks to distinguish it on grounds that we have long rejected.  He thus leaves us with two options: either follow *Clarke* or create an extraordinary exception to our precedent.  Choosing the former, we **AFFIRM** the district court's dismissal of Olivier's claims.

## I.

 Olivier is an evangelical Christian who often preaches in public.  He seeks to "impart[] . . . [the] message that everyone sins and deserves eternal damnation but [for] Jesus Christ."  He also protests "sins he believes are relevant for the community," like abortion, and what he describes as "whore[ness]," "drunk[enness]," and "fornicat[ion]."  *Olivier v. City of Brandon*, No. 3:21-cv-00636-HTW-LGI, 2022 U.S. Dist. LEXIS 196233, at *7 (S.D. Miss. Sept. 23, 2022).  To spread his views, Olivier uses signs and loudspeakers, and frequents high-traffic areas with many pedestrians.

One such area is the Brandon Amphitheater.  Owned by the City of Brandon, Mississippi, the Amphitheater hosts live events for crowds of up to 8,500 people.  Olivier alleges that, between 2018 and 2019, he visited the Amphitheater five or six times to evangelize.

In 2019, the City passed an ordinance (Section 50-45 of the Brandon Code of Ordinances—"the Ordinance") to reduce traffic around the Amphitheater during live events. The Ordinance redirects "protests" and "demonstrations" to a designated protest area three hours before an event, and one hour after. It also bans the use of loudspeakers that are "clearly audible more than 100 feet" from the protest area and requires all signs to be handheld. The Ordinance states that these restrictions apply "regardless of the content and/or expression" of the protest.

In May 2021, Olivier visited the Amphitheater with friends and family during a live concert to evangelize. He was stopped by the City's chief of police, William Thompson, who handed him a copy of the Ordinance and ordered him to go to the protest area. Though Olivier first complied, he later returned, believing the protest area was too isolated for attendees to hear his messages. He was then charged with violating the Ordinance.

Olivier pleaded *nolo contendere* (no contest) in municipal court. He received a suspended sentence of ten days' imprisonment and a fine. Olivier paid the fine but did not appeal his conviction.

Olivier then sued the City and Chief Thompson under § 1983, claiming the Ordinance violated the First and Fourteenth Amendments. He sought damages and also moved for a preliminary and permanent injunction to enjoin the City from enforcing the Ordinance. Defendants then moved for judgment on the pleadings as well as summary judgment, arguing that Olivier's claims were barred by *Heck*. The district court agreed with defendants, denied Olivier's request for injunctive relief, and dismissed his claims with prejudice.

No. 22-60566

Olivier now appeals on a single, narrow issue: whether the district court erred in barring his request for injunctive relief under *Heck*.[1]

## II.

Before addressing the merits, we begin with some housekeeping.

## A.

First is the standard of review. The district court never stated which motion it was granting. It did, however, refer to matters beyond the pleadings. We thus construe the court's decision as a grant of summary judgment. *See Reynolds v. New Orleans City*, 272 F. App'x 331, 335 (5th Cir. 2008) (construing the district court's decision as a grant of summary judgment in a similar situation); *cf.* Fed. R. Civ. P. 12(d) ("If, on a motion [for judgment on the pleadings], matters outside the pleadings are . . . not excluded . . . the motion must be treated as one for summary judgment").

Our review is *de novo*. *See Newbold v. Operator, L.L.C.*, 65 F.4th 175, 178 (5th Cir. 2023) (citation omitted). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We will draw "all reasonable inferences" in the non-movant's favor, *Newbold*, 65 F.4th at 178 (citation omitted), and may affirm "on any ground raised below and supported by the record." *Ballard v. Devon Energy Prod. Co., L.P.*, 678 F.3d 360, 365 (5th Cir. 2012) (citation omitted).

---

[1] Olivier has also abandoned his claims against Chief Thompson.

No. 22-60566

**B.**

Next are defendants' half-hearted assertions that Olivier forfeited his chance to oppose the application of *Heck* to his request for injunctive relief. He did not.

First, defendants claim that Olivier waived his challenge because he raised it in a sur-reply before the district court. We disagree. Olivier raised this objection in his initial opposition, albeit in a footnote. Whatever defects there may have been in this presentation were harmless because defendants were able to respond. *See Redhawk Holdings Corp. v. Schrieber*, 836 F. App'x 232, 235 (5th Cir. 2020) (holding that district courts may "consider arguments . . . raised for the first time in a reply brief" if it provides the opposing party "an adequate opportunity to respond."). The district court also succinctly recited the parties' arguments and ruled on this issue in its decision. *See Olivier*, 2022 U.S. Dist. LEXIS 196233, at *21. "An argument is not forfeited on appeal if the argument on the issue before the district court was sufficient to permit the district court to rule on it." *CEATS, Inc. v. TicketNetwork, Inc.*, 71 F.4th 314, 325 (5th Cir. 2023) (cleaned up). That is what happened here.[2]

Defendants also say that Olivier forfeited his objection to *Heck* because he failed to properly brief it on appeal. Their theory goes like this: *Heck* focuses on claims not relief. But in his briefs, Olivier focuses mostly on whether *Heck* bars injunctive *relief*, rather than his underlying *claims*. So he waived the issue on appeal—or so defendants allege.

---

[2] Olivier's case thus differs from others where the parties waived their claims by failing to give the trial court "a fair opportunity to consider the[m]." *Harper v. Lumpkin*, 64 F.4th 684, 691 (5th Cir. 2023) (citation omitted).

This distinction, however, is wordplay and finds no support in our *Heck* jurisprudence. Indeed, this court has used "claim" and "relief" interchangeably in its opinions. *See McCollum v. Lewis*, 852 F. App'x 117, 121 (5th Cir. 2021) ("*Heck* bars most of McCollum's *claims*.") (emphasis added); *White v. Fox*, 294 F. App'x 955, 960 (5th Cir. 2008) ("*Heck* . . . bar[s] these avenues of *relief*") (emphasis added). Olivier did not forfeit his challenge.

## C.

One last item of housekeeping remains. Defendants contend that Olivier's claims are not ripe for disposition. Olivier's request for injunctive relief is a pre-enforcement challenge. Such challenges are not ripe if the issues are "abstract or hypothetical." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (citation omitted). "[K]ey considerations" include the "fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (citation omitted). A case is generally ripe if the questions are "purely legal ones," and not if "further factual development is required." *Id.*; *see Feds for Med. Freedom v. Biden*, 63 F.4th 366, 386 (5th Cir. 2023). To demonstrate ripeness, a plaintiff must also show "some hardship." *Roark & Hardee LP*, 522 F.3d at 545 (citation omitted).

Olivier easily makes both showings. His challenge is a purely legal one: whether *Heck* bars a claim for injunctive relief that disputes the constitutionality of a local ordinance. *See Feds for Med. Freedom*, 63 F.4th at 386. Further factual development is not needed to address this claim. Olivier also states that he can no longer preach at the Amphitheater because of the Ordinance. "[W]here a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated." *Roark & Hardee LP*, 522 F.3d at 545 (quoting *Suitum v. Tahoe Reg'l Plan. Agency*, 520

U.S. 725, 743-44 (1997)).  That is precisely what Olivier alleges; his claims are thus ripe for disposition.  We move on to the merits.

## III.

*Heck* commands that "a convicted criminal may not bring a claim under . . . § 1983, if success on that claim would necessarily imply the invalidity of a prior conviction." *Aucoin v. Cupil*, 958 F.3d 379, 382 (5th Cir. 2020) (citation omitted).  This prohibition continues until the conviction is "reversed," "expunged," or "declared invalid." *Heck*, 512 U.S. at 487.  The *Heck* bar seeks to ensure "finality and consistency" of prior criminal proceedings and to prevent "duplicative litigation and the potential for conflicting judgments." *Aucoin*, 958 F.3d at 380, 382.

Though a classic example of a *Heck*-barred claim is one for money damages, courts have expanded *Heck* to also bar declaratory and injunctive relief. *See Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005); *Clarke*, 154 F.3d at 190-91.[3]  Thus:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or **equitable relief**), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would **necessarily** demonstrate the invalidity of confinement or its duration.

---

[3] *See also VanBuren v. Walker*, 841 F. App'x 715, 716 (5th Cir. 2021) ("*Heck* prevents [a plaintiff] from raising *any* constitutional claim or seeking *any* injunctive relief that would result in invalidating, or implying the invalidity of, a conviction or sentence that has not otherwise been reversed, expunged, or called into question." (citations omitted)); *Lavergne v. Clause*, 591 F. App'x 272, 273 (5th Cir. 2015) ("*Heck* applies to [] claims for declaratory and injunctive relief as well as damages under § 1983." (citation omitted)).

*Wilkinson*, 544 U.S. at 81-82 (emphasis added in bold); *see Nelson v. Campbell*, 541 U.S. 637, 647 (2004).

Olivier's plea of *nolo contendere* is a conviction that implicates *Heck*. *See Claunch v. Williams*, 508 F. App'x 358, 359 n.2 (5th Cir. 2013) ("[A] plea of *nolo contendere*. . . . is enough . . . to trigger *Heck*."); *Kastner v. Texas*, 332 F. App'x 980, 981 (5th Cir. 2009) (same); *see also* Miss. Code Ann. § 21-23-7(8) ("Upon the entry of a plea of nolo contendere[,] the court *shall convict* the defendant") (emphasis added). To prevail, he must therefore show that his request to enjoin the ordinance would not "necessarily" invalidate his conviction. *Wilkinson*, 544 U.S. at 82.

Olivier insists that he meets this burden. According to him, the injunction he seeks is entirely prospective; it concerns "the constitutionality of the ordinance and its application to his religious speech in the future." Defendants disagree, comparing Olivier's case to *Clarke*, an en banc decision of this court. We agree with defendants.

In *Clarke*, a prison inmate challenged the constitutionality of a prison rule that banned certain threats against prison employees. *Clarke*, 154 F.3d at 187-88. He sought damages and "prospective injunctive relief from . . . the rule on grounds of facial unconstitutionality" under the First Amendment. *Id.* at 188. The en banc court held that *Heck* barred both forms of relief. In so doing, the *Clarke* court distinguished between prospective relief that would "merely enhance eligibility for earlier release" and those that would "create entitlement to such relief." *Id.* at 190 (citation omitted). The inmate's request for injunctive relief implicated the latter, the court reasoned, because a favorable ruling "would be binding on state courts," which "could only conclude that [the inmate] had been convicted of violating an unconstitutional rule." *Id.* (citing cases). Thus, because the inmate's conviction had yet to be "reversed, expunged or otherwise declared invalid,"

his facial challenge to the constitutionality of the prison rule was "not []
cognizable in a § 1983 action." *Id.* at 191.

Clarke squarely applies to Olivier's case. As in *Clarke*, Olivier also
seeks to enjoin a state law under which he was convicted. *See id.* at 190. He
likewise requests "prospective injunctive relief . . . on grounds of facial
unconstitutionality." *Id.* at 188. Under *Clarke*, such relief "necessarily
implies" the invalidity of the conviction and is barred under *Heck*. *Id.* at 189.
It also goes without saying that, as an en banc decision, *Clarke* is binding. *See
Veasey v. Abbott*, 13 F.4th 362, 365 (5th Cir. 2021); *Coastal Prod. Servs. v.
Hudson*, 555 F.3d 426, 431 n.10 (5th Cir. 2009).

Olivier's attempts to distinguish *Clarke* do not persuade us. For
starters, he argues that the only relief he seeks is to enjoin the prospective
enforcement of the Ordinance, not damages. Not so: Olivier sought
compensatory and nominal damages at the district court. And either way,
*Clarke* would still bar his challenge. Damages notwithstanding, *Clarke* makes
clear that *Heck* forbids injunctive relief declaring a state law of conviction as
"facially unconstitutional." *Clarke*, 154 F.3d at 190. Simply put, a
"[c]onviction based on an unconstitutional rule is the sort of 'obvious defect'
that, when established, results in nullification of the conviction." *Id.*
(citations omitted).

True, unlike the inmate in *Clarke*, Olivier is not serving his sentence.
But in this circuit, *Heck* applies even if a § 1983 plaintiff is "no longer in
custody" and "thus [cannot] file a habeas petition." *See Randell v. Johnson*,
227 F.3d 300, 301 (5th Cir. 2000).

Most of the cases Olivier cites do not rebut *Clarke*. He quotes *Aucoin*,
for example, and says that there is "no *Heck* bar if the alleged violation occurs
'after' the cessation of the plaintiff's misconduct that gave rise to his prior
conviction." Yet *Aucoin* was an excessive force case that had nothing to do

with injunctive relief; nor did the plaintiff challenge the constitutionality of the underlying statute of conviction. *See Aucoin*, 958 F.3d at 382-83. Olivier also relies on *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), where the Supreme Court said, in passing, that "[o]rdinarily, a prayer for [certain] prospective relief" will not undermine *Heck*. In context, however, the Court was referring to the specific relief sought in that case: an injunction "requiring prison officials to date-stamp witness statements." *Id.* at 648. And as *Clarke* recognized, the injunction in *Edwards* had only an "indirect impact" on the inmate's conviction. *Clarke*, 154 F.3d at 189.

Olivier finds stronger support in *Wilkinson*, 544 U.S. 74 and *Skinner v. Switzer*, 562 U.S. 521 (2011). In *Wilkinson*, several inmates challenged the constitutionality of their parole-hearing procedures and sought declaratory and injunctive relief compelling officials to apply different rules. *Wilkinson*, 544 U.S. at 76-77. *Heck* did not preclude such relief because the inmates' success would merely mean "new [parole] eligibility review" or "a new parole hearing," neither of which "necessarily spell[ed] immediate or speedier release," or implied the invalidity of their sentences. *Id.* at 81. Likewise in *Skinner*, the Supreme Court permitted an inmate to seek an injunction compelling DNA testing because "[s]uccess . . . gains for the prisoner *only access* to [] DNA evidence, which may prove exculpatory, inculpatory, or inconclusive." *Skinner*, 562 U.S. at 525 (emphasis added). That was so even if the "ultimate aim" of the injunction may be to "use the test results as a platform for attacking his conviction." *Id.* at 534. These cases suggest that the Supreme Court sees *Heck* as a bar to injunctive relief in only the narrowest of circumstances. *Cf. Nelson*, 541 U.S. at 647 ("[W]e were careful in *Heck* to stress the importance of the term 'necessarily.'").

There is admittedly friction between *Clarke* and these decisions. On one hand, *Skinner* suggests that an injunction would not "necessarily" imply the invalidity of a conviction unless that outcome is "inevitable." *Skinner*,

562 U.S. at 534. Yet enjoining a law as unconstitutional may not "inevitably" lead to the invalidity of the underlying conviction; preliminary injunctions "merely [] preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). And the district court may very well reach a different result after trial; "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id.* (citations omitted). Such findings also would not bind Mississippi state courts, which have the ultimate say over Olivier's conviction. *See, e.g.*, *Stewart v. Guar. Bank & Trust Co.*, 596 So.2d 870, 873 (Miss. 1992) (explaining that an "interlocutory injunction" is not an "adjudication on the merits" and does not have *res judicata* effect). This court never addressed that issue in *Clarke*, relying instead on the preclusive effect that federal *judgments* and *findings on the merits* have on state courts.[4] *See Clarke*, 154 F.3d at 190.

But on the other hand, the injunctive relief in *Wilkinson* (parole review) and *Skinner* (DNA testing) resemble the one in *Edwards* (date-stamping): they concern matters that are entirely separate from the underlying conviction. *See Wilkinson*, 544 U.S. at 82 (explaining that the plaintiffs could proceed with their request for injunctive relief because they only "render invalid [] state *procedures*" for parole (emphasis added)). Indeed, a preliminary injunction will only issue if the proponent shows a likelihood of success that the statute is unconstitutional. *See Rest. Law Ctr. v. United States DOL*, 66 F.4th 593, 597 (5th Cir. 2023). Which is why courts describe this relief as a rare and "extraordinary and drastic remedy." *Anibowei v. Morgan*, 70 F.4th 898, 902 (5th Cir. 2023) (citation omitted).

---

[4] The dissent in *Clarke* raised some of these concerns. *See Clarke*, 154 F.3d at 191 (Garza, J., dissenting) (explaining that the injunction in *Clarke* would, at best, "possibly imply" the invalidity of the conviction).

That is different from a challenge to the constitutionality of the very law that led to plaintiff's conviction, as in *Clarke*. Again, *Clarke* distinguished *Edwards* on this very basis: it found the relief sought in *Edwards* had "only an indirect impact on the validity of [the] prisoner's conviction." *Clarke*, 154 F.3d at 189 (citations omitted); *see also Martin v. City of Boise*, 920 F.3d 584, 619 (9th Cir. 2019) (Owens, J., dissenting) (explaining that the injunctive relief in *Edwards* concerned "procedural violations" and that constitutional challenges, no matter how prospective, are "substantive").

Still, we need not bridge the gap between *Clarke* and these decisions today. Olivier does not claim that *Clarke* is no longer good law; he only seeks to distinguish it. We have already rejected those efforts above.

Finally, Olivier urges us to carve out an independent exception to *Heck* for prospective challenges like his. That is what the Ninth Circuit did in *Martin* when it permitted several homeless individuals to enjoin two ordinances that banned camping and lodging on public property. 920 F.3d at 603-04. In so doing, the *Martin* court reasoned that *Heck* ensured the "finality and validity of previous convictions"—not to "insulate future prosecutions from challenge." *Id.* at 611. But again, that brings us right back to *Clarke*, which Olivier does not seek to overturn. *See* 154 F.3d at 189; *see also Martin*, 920 F.3d at 619 (Owens, J., dissenting) (viewing the challenge in *Martin* as a "substantive" attack that "impl[ied] the invalidity" of the convictions). And because we have rejected Olivier's invitation to distinguish *Clarke*, we likewise leave this question for another day.

All this leads to one conclusion: affirmance. But we will make one modification to the judgment. The district court denied Olivier's claims "with prejudice." That mandate, however, would bar Olivier from pursuing his claims even if his conviction were later "reversed," "expunged," or "declared invalid." *Heck*, 512 U.S. at 487. To avoid this outcome, we have

explained that the "preferred" language under *Heck* is to dismiss the claims "with prejudice *to their being asserted again until the Heck conditions are met.*" *Deleon v. City of Corpus Christi*, 488 F.3d 649, 657 (5th Cir. 2007) (citation omitted) (emphasis added). So we will modify the judgment accordingly. *See id.* (modifying the judgment under similar circumstances); *see Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996) (same).

## IV.

Under *Clarke*, Olivier's request to enjoin the enforcement of the Ordinance as unconstitutional would "necessarily" imply the invalidity of his conviction. *Clarke*, 154 F.3d at 188. Thus, the *Heck* bar applies. We therefore AFFIRM the judgment as MODIFIED.